UNITED STATES DISTRICT COURT

DISTRICT OF NEVADA

BRENDA CHERRY EDWARDS,

    Plaintiff(s),

v.

STEPHEN ANTHONY LATTIMER, et al.,

    Defendant(s).

Case No.: 2:18-cv-01072-JCM-NJK

**REPORT & RECOMMENDATION**

(Docket No. 26)

Pending before the Court is Defendants' motion to strike Plaintiff's claims for future damages pursuant to Fed.R.Civ.P. 26 and 37. Docket No. 26. Specifically, Defendants' motion asks the Court to strike Plaintiff's claim for future medical expenses above $62,572.00.[1] *Id.* at 10. The Court has considered Defendants' motion, Plaintiff's response, and Defendants' reply. Docket Nos. 26, 27, 31. The motion is properly resolved without a hearing. *See* Local Rule 78-1. For the reasons stated below, the Court **RECOMMENDS** that Defendants' motion be **GRANTED** in part.

**I.      BACKGROUND**

This case arises from a car accident in January 2016. Docket No. 1-2 at 3. Two years later, Plaintiff sued Defendants in state court, alleging six causes of action for negligence. Docket Nos.

---

[1] Defendants' motion also asks the Court to strike Plaintiff's claims for loss of household services and enjoyment of life. Docket No. 26 at 11. However, Plaintiff concedes that those claims are improper and notes that she amended her disclosures to omit those damages. Docket No. 27 at 4, 10; *see also* Docket No. 31 at 26 (Plaintiff's fourth supplement to her Rule 26 disclosures). The Court thus need only decide whether Plaintiff's claim for future medical expenses is properly disclosed.

1

26 at 5, 27 at 6. Defendants removed that case to this Court based on diversity jurisdiction. *See* Docket No. 1. On July 16, 2018, the parties filed a joint proposed discovery plan, which the Court granted the next day. Docket Nos. 12, 14. That plan set the discovery cut-off for December 14, 2018. Docket No. 14 at 2. On July 25, 2018, Plaintiff served her disclosure of witnesses and production of documents, including her claim for damages for future medical expenses of $1,000,000. Docket No. 27 at 7.

On August 29, 2018, the parties filed a stipulation to extend discovery by 90 days, to March 14, 2019, which the Court granted. Docket Nos. 17, 18 at 3. On December 21, 2018, the parties filed another stipulation to extend discovery by 90 days. Docket No. 19 at 4. The Court denied that stipulation, however, because the parties failed to show that they were diligently conducting discovery. Docket No. 20 at 2. On January 11, 2019, Plaintiff filed an emergency motion to extend discovery by 90 days based on "Plaintiff's worsening medical condition." Docket No. 21. The Court granted the motion, extending the discovery cut-off to June 12, 2019. Docket No. 22 at 6.

On June 6, 2019, Plaintiff's counsel emailed Defendants' counsel, asking him whether he would agree to extend discovery because Plaintiff had an appointment with Dr. Garber on July 2, 2019, for imaging studies upon which, Plaintiff's counsel stated, Plaintiff's future treatment depended. Docket No. 27 at 8. On June 11, 2019, Defendants' counsel declined to agree to extend discovery. *Id.* Given that response, Plaintiff sent her third supplement to her disclosure to Defendants "with the most up-to-date information regarding her medical treatment." *Id.* There, she again claimed future medical expenses of $1,000,000. Docket No. 26-1 at 19. Plaintiff noted that:

> With regard to [her] future medical treatment, [Dr. Garber] . . . has opined that . . . Plaintiff may be a candidate for an intrathecal pump. . . . [Dr. Garber] indicated that further recommendations will be forthcoming based upon information obtained in recent imaging studies. . . . The total cost of the [intrathecal pump] surgery would be . . . $62,572.00[.] . . . Plaintiff is scheduled to see Dr. Garber on July 2, 2019. Plaintiff continues to treat with Dr. Garber and his additional medical opinions will be formally disclosed.

*Id.*

On July 15, 2019, Defendants filed the instant motion to strike Plaintiff's claim for future medical expenses. Docket No. 26. On July 29, 2019, Plaintiff sent her fourth supplement to her disclosure to Defendants, still claiming future medical expenses of $1,000,000.00, with the same computation limited to the cost of the intrathecal pump surgery. *See* Docket No. 31 at 26.

**II.    STANDARDS**

    A.  Initial Disclosure Requirements

Rule 26(a)(1)(A) requires parties to provide initial disclosures to the opposing parties without awaiting a discovery request. The disclosures must include a computation of each category of damages claimed by the disclosing party. Fed.R.Civ.P. 26(a)(1)(A)(iii). The purpose of the initial disclosure requirements is important and clear. Parties should be put on notice of the factual and legal contentions of the opposing party and the initial disclosure requirements eliminate surprise and trial by ambush. *See, e.g.*, *Ollier v. Sweetwater Union High School Dist.*, 768 F.3d 843, 862–63 (9th Cir. 2014).

The initial disclosure requirements "accelerate the exchange of basic information about the case and eliminate the paper work involved in requesting such information." *R & R Sails, Inc. v. Insurance Co. of Penn.*, 673 F.3d 1240, 1246 (9th Cir. 2012) (quoting Fed.R.Civ.P. 26, advisory committee notes). "Moreover, early disclosure also functions to assist the parties in focusing and prioritizing their organization of discovery." *City & County of San Francisco v. Tutor-Saliba Corp.*, 218 F.R.D. 219, 221 (N.D. Cal. 2003). The damages computation in particular enables a defendant to understand the contours of its liability exposure and, by extension, to make informed decisions about settlement. *Frontline Med. Assocs., Inc. v. Coventry Health Care*, 263 F.R.D. 567, 569 (C.D. Cal. 2009).

The benefits of initial disclosures are significant and courts have a duty to enforce the initial disclosure requirements; however, courts must apply the Rules with an eye toward "common sense," keeping in mind the purposes that the Rules are intended to accomplish. *See, e.g.*, *Jackson v. United Artists Theatre Circuit, Inc.*, 278 F.R.D. 586, 592 (D. Nev. 2011). "Rule 26 does not elaborate on the level of specificity required in the initial damages disclosure." *Tutor-Saliba*, 218 F.R.D. at 220. The level of specificity for the damages computation varies depending on the stage

3

of the litigation and the claims at issue. "A party must make its initial disclosures based on the information then reasonably available to it." Fed.R.Civ.P. 26(a)(1)(E). "A computation of damages may not need to be detailed early in the case before all relevant documents or evidence has been obtained by the plaintiff." *Cardoza v. Bloomin' Brands, Inc.*, 2015 WL 3875916, at *2 (D. Nev. June 22, 2015) (quoting *LT Game Int'l Ltd. v. Shuffle Master, Inc.*, 2013 WL 321659, at *6 (D. Nev. Jan. 28, 2013)). Just as courts eschew broad contention interrogatories at the outset of a case as premature, the initial damages computation is generally viewed as merely a preliminary assessment subject to revision. *Tutor-Saliba*, 218 F.R.D. at 222. In sum, a party's initial disclosure should provide "the best information then available to it concerning that claim, however limited and potentially changing it may be." MOORE'S FEDERAL PRACTICE, § 26.22[4][c][i] (3d ed. 2016).[2]

A precise damages computation may be impossible until the plaintiff obtains some discovery, undergoes more treatment, and, in some cases, obtains expert analysis. *Tutor-Saliba*, 218 F.R.D. at 222. Especially in the context of an injured plaintiff alleging ongoing or future medical damages, her claim for damages may not be static. At the outset of litigation, she may lack sufficient information to provide a precise measure of what damages she will claim at trial. While future expert analysis does not relieve a plaintiff of providing the information reasonably available to her as for her damages computation, a precise method of calculation need not be disclosed at first if it is properly the subject of expert testimony that will be provided through future expert reports. *Frontline Medical*, 263 F.R.D. at 569–70; *see also Tutor-Saliba*, 218 F.R.D. at 221 (citing *Pine Ridge Recycling, Inc. v. Butts County, Ga.*, 889 F.Supp. 1526, 1527 (M.D. Ga. 1995)).

A "preliminary assessment" may suffice at the outset of a case, but it will not suffice as the case progresses: "While a party may not have all of the information necessary to provide a computation of damages early in the case, it has a duty to diligently obtain the necessary information and prepare and provide its damages computation within the discovery period."

---

[2] The touchstone of this analysis is whether information is "reasonably available" to the plaintiff. A plaintiff is not excused from making initial disclosures because she has not diligently investigated her case. Fed.R.Civ.P. 26(a)(1)(E).

*Jackson*, 278 F.R.D. at 593; *see also Design Strategy, Inc. v. Davis*, 469 F.3d 284, 295 (2d Cir. 2006) (damages computation should be more detailed as the case progresses). If a party learns that its disclosures are incomplete or inaccurate, it has a duty to supplement them "in a timely manner." *See* Fed.R.Civ.P. 26(e).[3]

Read together, the Rules do not always require that a complete and unchangeable damages computation be presented at the outset of the case. The initial disclosure must contain a damages computation with the information then reasonably available to the plaintiff. If it becomes clear based on new circumstances that the damages computation is incorrect or incomplete, the plaintiff has a duty to supplement the initial damages computation. There is no bright-line rule that such supplementation is improper if made after the expert disclosure deadline or even after the close of discovery. *See, e.g.*, *Am. Gen. Life Ins. Co. v. Vistana Condo. Owners Assoc.*, 2016 WL 1611585, at *2 (D. Nev. Apr. 21, 2016). Instead, the key inquiry is whether the timing of the supplemental disclosure is reasonable based on when the information was available to the plaintiff. *See, e.g.*, *id.* ("Timing is better gauged in relation to the availability of the supplemental information"). While a plaintiff no doubt has a duty to obtain sufficient information within a reasonable time as to what damages she will claim, the Rules provide for needed flexibility in supplementing the initial disclosure damages computation as the case progresses and circumstances evolve.

B. Sanctions for Violating Disclosure Requirements

When a defendant believes a plaintiff violated the requirements for disclosing a damages computation, the defendant may move for sanctions pursuant to Rule 37(c). The party requesting sanctions bears the initial burden of establishing that the opposing party violated the Rule 26's disclosure requirements. *E.g.*, *Lodge v. United Homes, LLC*, 787 F.Supp. 2d 247, 258 (E.D.N.Y. 2011). If the movant satisfies that burden, then the Court determines appropriate sanctions. Rule 37(c) "gives teeth" to the requirements of Rule 26(e). *Yeti by Molly, Ltd. v. Deckers Outdoor Corp.*, 259 F.3d 1101, 1106 (9th Cir. 2001). Rule 37(c) provides that the failure to comply with

---

[3] The rule requires a supplemental disclosure "if the additional or corrective information has not otherwise been made known to the other parties during the discovery process or in writing." Fed.R.Civ.P. 26(e)(1)(A).

the disclosure requirements of Rule 26(a) or Rule 26(e) will lead to the exclusion of such evidence. Fed.R.Civ.P. 37(c)(1). Rule 37's 1993 advisory committee notes describe the exclusion sanction as "self-executing" and "automatic." However, the Ninth Circuit has recognized that lower courts are entrusted with "particularly wide latitude" in exercising this discretion to impose sanctions pursuant to Rule 37(c). *Yeti by Molly*, 259 F.3d at 1106; *see also Risinger v. SOC, LLC*, 306 F.R.D. 655, 662 (D. Nev. 2015).

In exercising that discretion, courts determine first whether the failure to comply with the initial disclosure requirements was either substantially justified or harmless. Fed.R.Civ.P. 37(c)(1). The party facing sanctions bears the burden of establishing that substantial justification or harmless exists. *See, e.g.*, *Yeti by Molly*, 259 F.3d at 1107. Several factors guide the determination of whether substantial justification and harmlessness exist, including (1) prejudice or surprise to the party against whom the evidence is offered; (2) the ability of that party to cure the prejudice; (3) the likelihood of disruption of trial; and (4) bad faith or willfulness in not timely disclosing the evidence. *See, e.g.*, *Woodworker's Supply, Inc. v. Principal Mut. Life Ins. Co.*, 170 F.3d 985, 993 (10th Cir. 1999); *Lanard Toys Ltd. v. Novelty, Inc.*, 375 Fed.Appx. 705, 713 (9th Cir. 2010) (citing *David v. Caterpillar, Inc.*, 324 F.3d 851, 857 (7th Cir. 2003)). At bottom, this is an equitable analysis entrusted to the Court's discretion. *See, e.g.*, *Goodman v. Staples The Office Superstore*, LLC, 644 F.3d 817, 826 (9th Cir. 2011) (exercising discretion to deny exclusion sanction as a matter of "fairness" and to avoid an "unjust" result). If the party facing sanctions establishes either exception, the imposition of exclusion sanctions is improper. *See* Fed.R.Civ.P. 37(c)(1).

However, exclusion sanctions are not a foregone conclusion if substantial justification or harmlessness have not been established: "Rule 37(c)(1) does not require the court, in all instances, to exclude evidence as a sanction for a late disclosure that is neither justified nor harmless." *Jackson*, 278 F.R.D. at 594; *see also Torres v. City of Los Angeles*, 548 F.3d 1197, 1213–14 (9th Cir. 2008) (holding that the burden of establishing substantial justification or harmlessness had not been met, but that on remand an expert witness could testify if a proper report were furnished). Instead, Rule 37(c) provides that, "[i]n addition to or instead of" exclusion sanctions, the Court

6

may impose other sanctions, including payment of reasonable expenses (including attorneys' fees), informing the jury of the party's failure, and any other appropriate sanction. Fed.R.Civ.P. 37(c)(1)(A)–(C). Courts have identified various factors to guide the decision of whether to impose exclusion sanctions, including: (1) the public's interest in expeditious resolution of litigation; (2) the court's need to manage its docket; (3) the risk of prejudice to the other parties; (4) the public policy favoring disposition of cases on their merits; and (5) the availability of less drastic sanctions. *See*, *e.g.*, *Jackson*, 278 F.R.D. at 594 (citing *Wendt v. Host Int'l, Inc.*, 125 F.3d 806, 814 (9th Cir. 1997)). Additionally, when an exclusion sanction amounts to dismissal of a claim, the court must also consider whether the non-compliance involved willfulness, fault, or bad faith. *R & R Sails, Inc. v. Insurance Co. of Penn.*, 673 F.3d 1240, 1247 (9th Cir. 2012). Although a finding of willfulness or bad faith is not otherwise required, they are factors in deciding the appropriate level of sanction to impose. *Jackson*, 278 F.R.D. at 594 (collecting cases).

In practice, exclusion sanctions are generally limited to "extreme situations." *See Tutor-Saliba*, 218 F.R.D. at 220–21; *see also Update Art, Inc. v. Modiin Pub., Ltd.*, 843 F.2d 67, 71 (2d Cir. 1988) (exclusion sanctions are harsh remedies that "should be imposed only in rare situations"). Absent a showing of bad faith or other misconduct, courts are leery of imposing the harsh sanction of exclusion absent a significant possibility of prejudice due to the untimeliness of the disclosure. Hence, "[c]ourts are more likely to exclude damages evidence when a party first discloses its computation of damages shortly before trial or substantially after discovery has closed." *Jackson*, 278 F.R.D. at 594. "Lesser sanctions and other measures are generally more appropriate than evidence preclusion when the disclosure is provided during the discovery period and the delay can be remedied during the existing discovery period or with a limited and brief extension of discovery." *Jones*, 2016 WL 1248707, at *7 (citing *Granados v. N. Nev. High Speed, LLC*, 2014 WL 5503118, at *5 (D. Nev. Oct. 30, 2014)); *see also Wilson v. Wal-Mart Stores, Inc.*, 2016 WL 4699693, at *3 (D. Nev. Sept. 7, 2016) (concluding that, even assuming a violation, the spirit of Rule 1 required extending discovery rather than excluding most of the plaintiff's claimed damages). "[E]ven in cases involving very belated disclosures of damages computations, the court should consider the degree of willfulness or bad faith by the plaintiff in failing to make the

disclosure, the availability of lesser sanctions, and other orders to prevent prejudice to the other party caused by the late disclosures." *Jones*, 2016 WL 1248707, at *7.

### III.     ANALYSIS

Turning to the instant motion, the Court must decide first whether Plaintiff's claim for future medical expenses was adequately disclosed. Defendants submit that it was not because it remains mostly unsubstantiated. Specifically, Defendants submit that Plaintiff adequately disclosed her future medical expenses only up to the cost of the intrathecal pump surgery that Dr. Garber opined she needed—that is, $62,572.00. Docket No. 31 at 6. Plaintiff submits that her claim for future medical expenses complies with Rule 26 because her $1,000,000.00 estimate "was reasonably based on the extent of her injuries" and "[a]ny opinions made by [Dr. Garber] will be presented at trial, rather than [her estimated amount]." Docket No. 27 at 4, 12.

Defendants have the better argument. Aside from the cost of the intrathecal pump surgery, Plaintiff fails to adequately explain the basis for her estimated future medical expenses. Plaintiff submits only that the $1,000,000.00 is reasonable based on the extent of her injuries. Docket No. 27 at 12. However, Plaintiff cannot make, and rest on, her own estimate based only on what she considers "reasonable"—especially when the only substantiated future medical cost opined by her treating physician is less than 10% of Plaintiff's estimated amount. Put another way, it is unclear to the Court (and presumably to Defendants), why Plaintiff estimated $1,000,000.00 rather than a number closer to the known amount. Although a preliminary assessment may suffice at the outset of a case, it does not suffice as the case progresses. Here, Plaintiff first estimated $1,000,000.00 in future medical expenses on July 25, 2018. Plaintiff has failed to substantiate this number, or to change it to a substantiated amount, even as recently as July 29, 2019, in her fourth supplement to her disclosures. Further, discovery closed—after numerous extensions—on June 12, 2019. Docket No. 22 at 6. Thus, the Court finds that Plaintiff has not been diligent in obtaining the necessary information to provide a complete future medical expenses computation, for the amount alleged, within the discovery period. Accordingly, the Court finds that Plaintiff's future medical expenses claim is $62,572.00, for the intrathecal pump surgery.

The Court now turns to what sanctions are appropriate for Plaintiff's violation of Rule 26's disclosure requirements. Plaintiff fails to discuss any substantial justification or harmlessness—let alone meet her burden of establishing one of those exceptions—for failing to adequately disclose a complete future medical expenses computation. Even so, exclusion sanctions are not a foregone conclusion.

The Court must still guide its decision on exclusion sanctions by the *Wendt* factors. The first factor favors exclusion sanctions because this case has been ongoing since 2018, discovery has been extended more than once for significant periods of time, and trial is set to start on May 4, 2020. *See* Docket; *see also* Docket Nos. 18, 22, 37. If discovery were reopened—as Plaintiff asks the Court to do, if the Court decides that her future medical expenses are inadequately substantiated, Docket No. 27 at 13–16—it would delay trial and this case even more. The second factor favors exclusion sanctions for similar reasons. *See Johnson v. Mammoth Recreations, Inc.,* 975 F.2d 604, 610 (9th Cir. 1992). The third factor favors exclusion sanctions because a damages computation is what enables a defendant to understand the contours of its liability exposure and, in turn, make informed decisions, and Defendants have no way of knowing how much of Plaintiff's $1,000,000 future medical expenses estimate can be substantiated. The fourth factor disfavors exclusion sanctions because it would prevent Plaintiff's alleged future medical expenses from being decided on the merits. Finally, the fifth favor favors exclusion sanctions because no less drastic sanctions are available considering how far along this case is in litigation. Reopening discovery to allow Plaintiff to substantiate all of her alleged future medical expenses—after already having well over a year to do so—would delay trial and this case even more. Plaintiff's lack of diligence is not an appropriate basis for the Court to reopen discovery. Accordingly, the Court finds that striking Plaintiff's future medical expenses beyond her substantiated amount of $62,572.00 is an appropriate sanction for Plaintiff's failure to comply with Rule 26's disclosure requirements.

//
//
//

9

## IV. CONCLUSION

For the reasons stated above, the Court **RECOMMENDS** that Defendants' motion be **GRANTED** in part, and that any future medical expenses beyond $62,572.00, the cost of the intrathecal pump surgery be **STRICKEN**. Docket No. 26.

IT IS SO ORDERED.

Dated: February 11, 2020

                                                    Nancy J. Koppe
                                                  United States Magistrate Judge

## NOTICE

This report and recommendation is submitted to the United States district judge assigned to this case pursuant to 28 U.S.C. § 636(b)(1). A party who objects to this report and recommendation must file a written objection supported by points and authorities within fourteen days of being served with this report and recommendation. Local Rule IB 3-2(a). Failure to file a timely objection may waive the right to appeal the district court's order. *Martinez v. Ylst*, 951 F.2d 1153, 1157 (9th Cir. 1991).